# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARILYN P. MORRICAL,

      Plaintiff,

vs.                                          No. CIV 01-0622 LH/LCS

LARRY G. MASSANARI,[1]
**Acting Commissioner,
Social Security Administration,**

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed September 14, 2001 (*Doc. 6*). The Commissioner of Social Security issued a final decision denying the Plaintiff her claim for a period of disability and disability insurance benefits. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is not well taken and recommends that it be DENIED.

## PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.      Plaintiff Marilyn Morrical filed an application for a period of disability and disability insurance benefits with the Social Security Administration on June 10, 1997 alleging a disability since

---

[1]     Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

January 3, 1997 due to degenerative arthritis and lower back pain. *See* R. at 48. Plaintiff's application was denied at the initial level on August 14, 1997, see R. at 30, and at the reconsideration level on September 24, 1997. *See* R. at 31. Plaintiff appealed the denial of her claim by filing a Request for Hearing by an Administrative Law Judge (ALJ) on October 6, 1997. *See* R. at 40.

2. The Commissioner's ALJ conducted a hearing on Ms. Morrical's application on July 10, 1998. *See* R. at 19. The ALJ made the following conclusions according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since January 3, 1997; the severity of the claimant's impairments did not meet or equal a listed impairment; the claimant had "severe" impairments consisting of degenerative changes in her lumbar spine, and arthritis in her joints; the claimant's subjective complaints and functional limitations, including pain are exaggerated and therefore lacked credibility; and the claimant retains the residual functional capacity to return to past relevant work of at least light work activity. *See* R. at 19-25.

3. The ALJ entered his decision on August 25, 1998. *See* R. a 25. Thereafter, the Plaintiff filed a request for review on August 27, 1998 to the Appeals Council, *see* R. at 14, and submitted additional evidence. On April 5, 2001, the Appeals Council issued its decision denying her request for review and upholding the final decision of the ALJ. *See* R. at 5. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on May 31, 2001. (*Doc.* 1).

## II. STANDARD OF REVIEW

4. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

5. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f) and 416.920. The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

6. At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *See id.*

## III. ADMINISTRATIVE RECORD

7. The record indicates that the Plaintiff visited the Coordinated Chronic Pain Clinic on and off from March, 1992 to January, 1994. *See* R. at 91-132. In March of 1992, Richard Trosh, M.D. evaluated the Plaintiff for lower back pain. *See* R. at 94. The Plaintiff claimed that her pain dated back to January of 1991 when she was lifting garbage bags into a dumpster. *Id.* She also stated that she was in a motorcycle accident back in 1963 and suffered from whiplash and injury to her neck. *Id.* The doctor assessed the Plaintiff with bulging lumbar discs causing severe root inflammation. *See* R. at 95. He also stated that the Plaintiff suffers from "tight hamstrings and gluteal muscles aches possibly as a result of pelvic asymmetry to her 15 months of back pain." *Id.* He discussed with the patient the possibility of epidural injections of steroids and local anesthetics and gave Ms. Morrical a proscription for Doxepin. *Id.* One month later, Ms. Morrical did receive injections and stated that she felt moderate relief for several days and then the pain gradually returned. *See* R. at 100.

8. In May of 1992, the Plaintiff complained that her pain was worsening and that she was having difficulty walking, sitting and standing. *See* R. at 104. However, she did state that Doxepin helped her mood and that she felt much less depressed. *Id.* The doctor suggested that her pain was muscular related and that mild stretching and walking may be helpful. *Id.*

9. The last legible notes from the Clinic are dated June 18, 1992. *See* R. at 92. However, there are many entries of illegible notes dated from March, 1993 to January, 1994. *See* R. at 115-35. There are no medical records within the record from February, 1994 to May, 1997.

10. According to the record, after what appears to be a doctor's visit in January, 1994,

as evidenced by hand-written notes,[2] the Plaintiff was not seen by any of her physicians regarding her symptoms of pain until August of 1997. *See* R. at 115. The Court recognizes that the Plaintiff filed for her application for Social Security benefits in June of 1997. *See* R. at 43. On August 11, 1997, Jan Hamilton, M.D. evaluated Ms. Morrical for degenerative arthritis in her lower back for purposes of her Social Security application and not as a treating physician. *See* R. at 168. Dr. Hamilton's notes stated that Plaintiff gave "a history of low back pain and symptoms of lower extremity radiculopathy. There is no evidence of upper or lower extremity radiculopathy The patient appears to have decreased range of motion at the cervical and lumbar regions of the spine although her level of effort is judged to be fair and there is evidence of symptom magnification. I do not believe she is totally dependant on a cane, at least not for short distances." *See* R. at 171-72. The doctor also noted that with respect to the Plaintiff's ability to work, "she clearly experiences chronic pain in her lower back and to a lesser degree in her neck . . . I cannot state with certainty . . . . that patient is in fact unable to perform work-related activities." *See* R. at 172. Ms. Morrical was also noted to be taking Diazepam and acetaminophen with codeine. *See* R. at 168.

11. In October of 1997, Ms. Morrical visited referring physician, Frank O'Sullivan, M.D. In her visit, Ms. Morrical reported pain in her cervical spine, shoulder regions, hand, low back, and ankle. *See* R. at 138. The doctor assessed Ms. Morrical as presenting a classic clinical picture of fibromyalgia and arthritis and that she would benefit from a regular program of stretching and aerobic exercise. *See* R. at 140. One month later, Dr. Sullivan noted that Ms. Morrical's condition was essentially unchanged. *See* R. at 182. He further stated that she continued to have neck pain and stiffness, as well as generalized arthralgiae and myalgiae. *Id*.

---

[2] Because, the notes are illegible, the purpose of the Plaintiff's visit is unknown. *See* R. at 115.

12. In August of 1997, Clint Morgan, M.D. completed a residual functional capacity assessment after reviewing the Plaintiff's medical records. *See* R. at 173. His objective clinical finding was that the Plaintiff was capable of medium level work

13. In June of 1999, Ms. Morrical received a neurological consultation from Daniel G. Shibuya, M.D. Dr. Shibuya noted Ms Morrical's past medical history as including fibromyalgia, coronary heart disease, degenerative joint disease, and chronic obstructive pulmonary disease. *See* R. at 192. He also noted that her current medications included Lescol, Premarin, Prozac, Deoxepin, Tiazac, Prilosec, and multivitamins. *Id*. The doctor's impression was that Ms. Morrical was experiencing episodes of disequilibrium with tendencies to fall to the left side. *See* R. at 193. "The patient's neurological examination is notable for some mild hyperreflexia." *See* R. at 193. There is no reference to the Plaintiff's complaints of pain.

14. The following summary represents questions that were asked by the ALJ at Ms. Morrical's hearing on July 10, 1998. The Plaintiff testified that her last job included duties such as pulling stock off shelves, packing, and lifting boxes up to 80 or 90 pounds. *See* R. at 206. Ms. Morrical stated that in January of 1997 she was told to leave because she was not performing her job correctly. *See*. R. at 207. The Plaintiff explained that her pain consists of back, shoulder, and elbow pain. *See* R. at 210. She stated that she sees Dr. Sullivan every six to eighth months and has been taking Diproxin for her pain. *See* R. at 210-11. Her sitting is limited to ten to fifteen minutes one day and thirty minutes another. *See* R. at 217. She also stated that she can stand from a few minutes to forty-five minutes on any given day. *See* R. at 219. Ms. Morrical stated that she does some dusting and helps her husband with the laundry. *See* R. at 220. She also stated that she is in pain all the time. *See* R. at 225. The record indicates that over the years, the Plaintiff has stated that she bowls, walks,

6

and enjoys motor cycle riding. *See* R. at 94. The Plaintiff's attorney did not ask any questions and did not call any other witnesses.

## III. DISCUSSION

15.     Plaintiff raises five arguments in support of her Motion to Reverse or Remand the Administrative Agency Decision. First, the ALJ failed to develop the record; second, the ALJ inappropriately and inaccurately found that the claimant could perform her past relevant work; third, the ALJ failed to properly determine the claimant's residual functional capacity; fourth, the ALJ failed to do an appropriate analysis of the claimant's pain condition; and lastly, the ALJ erred in his credibility assessment.

### Duty to Develop the Record

16.     The Plaintiff notes that the ALJ in this case failed to develop the record regarding the Plaintiff's mental impairment of depression. Specifically, the Plaintiff argues that because the ALJ was aware of the Plaintiff's depression pursuant to her testimony and the types of medication she was taking, he should have developed the record by writing to the claimant's treating doctor in order to obtain consultative examinations, by requesting testimony from the Plaintiff's husband, or by obtaining the opinion of a medical advisor.

17.     The Commissioner argues that the ALJ was not required to develop the record further because the Plaintiff never presented medical evidence to support her purported mental impairment. Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues. *See Carter v. Chater*, 73 F. 3d 1019, 1021 (10th Cir. 1996)(quoting *Baca v. Dept. of Health & Human Servs.*, 5 F. 3d 476, 479-80 (10th Cir. 1993)(citations omitted)). Even so, the lack of any medical evidence in the record

to support an alleged impairment does not obligate the ALJ to further develop the record. *See Massimino v. Shalala*, 927 F. Supp. 139, 146 (S. D. N. Y. 1996); *Howell v. Sullivan*, 950 F. 2d 343, 349 (7th Cir. 1991). In this instance, the medical record does not contain any evidence relating to any of the alleged mental impairment. Accordingly, I cannot find that the ALJ erred by not developing the record with respect to the Plaintiff's alleged mental impairment.

## Credibility

18. Plaintiff contends that the ALJ failed to perform the proper analysis of the Plaintiff's pain condition. In conjunction with this argument, Ms. Morrical contends the ALJ's credibility determination is also flawed. The ALJ found that although Ms. Morrical suffers from mild arthritis, the record "suggests questions about the credibility of Claimant's statements about the severity and intensity of her subjective symptoms." *See* R. at 21.

19. In evaluating a claim of disabling pain, the appropriate analysis considers (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *See Glass v. Shalala*, 43 F. 3d 1392, 1395 (10th Cir. 1994) (citing *Luna v. Bowen*, 834 F. 2d 161, 163 (10th Cir. 1987)).

20. The ALJ properly applied these factors in this case. The ALJ stated that by November, 1997, the

> "Claimant's diagnosis was mild generalized osteoarthritis, chronic pain, and primary fibromyalgia. Although Claimant was complaining to the Administration of constant, debilitating pain throughout her body, her doctor reported finding only: 'Mild degenerative changes in the small joints of the hands. Fairly good range of motion in the cervical spine, wrists, elbows, shoulders and knees. She complains of stiffness and periarticular tenderness in both hips, but fairly good passive range of motion.' The focus of Claimant's physical therapy appears to have been her hands. She was

discharged in December 1997, with significantly decreased pain and increased strength in both hands. *See* R. at 21.

The ALJ also noted that

> "[s]ince at least July 1992, Claimant has reported that she 'cannot lift anything.' In spite of her complaints of pain and limitation, however, Claimant worked until January 1997. What is more, Claimant has described her last job as requiring that she frequently lift 70 pounds or more. . . . In view of the Claimant's description of the work she was doing as late as January 1997 and the lack of objective clinical findings as of August 1997, the opinion of State agency physicians that Claimant retained the capacity for medium level work is not unreasonable. *See* R. at 24.

The ALJ's findings acknowledge that the Plaintiff's complaints of pain were significant only after her recent employer required her to lift 70 pounds. There is nothing in the record to suggest that she was having difficulty with her duties before that period. The record simply does not support a connection between her previous work and her complaints of pain.

21. If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Secretary's decision stands and Plaintiff is not entitled to relief. *See e.g., Hamilton v. Secretary of Health & Human Servs.*, 961 F. 2d 1495, 1497-1500 (10th Cir. 1992). I find that the ALJ supported the Plaintiff's pain determination with substantial evidence. There is nothing in the record to contradict the evidence relied upon in the ALJ's opinion. In addition to the ALJ's pain determination being supported with substantial evidence, the ALJ's credibility determination with respect to the Plaintiff's complaint of pain was also properly made. While it is true that this Court generally defers to credibility determinations of the ALJ, such deference is not absolute. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1490 (10th Cir. 1993).

22. The ALJ should consider, when determining credibility, such factors as "the levels of

medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence." *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston*, 838 F.2d at 1132 and n. 7).

23.  In this case, the ALJ based his credibility assessment on inconsistencies in the record and a report of symptom magnification. For example, the ALJ noted that "in one report filed with the Administration in June, 1997, Claimant reported no medications for pain. In the same report, she stated that she was taking Tylenol . . . . and Excedrin, non-aspirin, 'when needed.'" *See* R. at 22. The ALJ also noted that when one of the Plaintiff's treating physicians saw her in November, 1997, the doctor noted the Plaintiff was taking Percocet, as needed for her pain. However, at the time of the hearing, Ms. Morrical stated she was only taking Excedrin without aspirin for pain. *Id*. In addition, there is evidence in the record that the Plaintiff has taken codeine for pain. *See* R. at 169. However, an evaluation states the Plaintiff is allergic to codeine. *See* R. at 192.

24.  The ALJ further added that the Plaintiff was exhibiting evidence of symptom magnification as noted by Dr. Hamilton in August of 1997. *See* R. at 172. Dr. Hamilton recorded that she did not believe the Plaintiff was totally dependant on the cane and that she walked without a specific limp although she did walk slowly. *Id*. The Plaintiff argues that there is evidence demonstrated from the record of her pain and discomfort resulting from her impairments. However, the majority of the evidence is dated in 1992, five years before she stopped working.

25.  Furthermore, the Court adds that according to the record, the Plaintiff sought

10

treatment for her pain in conjunction with her work one month before she filed her application for Social Security benefits. There are no medical records within the record from February, 1994 to May, 1997. The Plaintiff filed her application on June 10, 1997. *See* R. at 43. She had been working from 1994 to 1997 without the need to visit any physician.

26.      The Plaintiff argues that her husband was willing to provide testimony that would have supported her complaints of pain but the ALJ erred by failing to call him as a witness. In response to this argument, the Court agrees with the government in that when a claimant is represented by counsel at the administrative hearing, the ALJ should be able to rely on the evidence presented by such counsel and not bear the burden of identifying issues requiring further development. *See Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

27.      Since it is not the duty of this Court to make an independent judgment as to the credibility of the Plaintiff's testimony regarding her subjective physical symptoms, the Court defers to the ALJ's finding. However, the ALJ must have based his finding on substantial evidence. In coming to his conclusion, the ALJ based his credibility assessment of the claimant on evidence on the record and reasonably determined that the claimant was not credible. A review of the record establishes that the ALJ's findings are accurate and entirely consistent with the record. The ALJ applied the correct legal and standards and substantial evidence supports his determination that Plaintiff's complaints of disabling pain lacked credibility.

## Residual Functional Capacity

28.      The Plaintiff next argues that the ALJ failed to properly determine her residual

functional capacity (RFC) pursuant to SSR 96-8p. The ALJ found the Plaintiff had the exertional capacity to perform work at least light work activity. *See* R. at 24.[3] Plaintiff asserts that the ALJ did not make a proper RFC assessment because the decision did not express the Plaintiff's capacity on a function-by-function basis and that he did not properly support his RFC determination with substantial evidence. These arguments are not persuasive.

29. Residual functional capacity is defined by the regulations as "what you can still do despite your limitations." 20 C.F.R. § 404.1545(a); *see also Davidson v. Sec'y of HHS*, 912 F.2d 1246, 1253 (10th Cir.1990). The ALJ's decision that a claimant retains the RFC to do other work must be based on substantial evidence as are most ALJ determinations. *See Gossett*, 862 F.2d at 804. In determining a claimant's limitations, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b). The ALJ must also consider "all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence." SSR 96-7p. Furthermore, in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. SSR-95-5p.

30. Here, the ALJ made detailed findings required by the regulations and rulings. In

---

[3] Light work involves lifting no more than twenty pounds at a time, with frequent lifting and carrying of objects weighing up to ten pounds. *See* 20 C. F. R . §§ 404.1567(b); 416.967(b).

addition to arriving at an RFC, agency rulings require that an ALJ must provide a "narrative discussion describing how the evidence supports" his or her conclusion. See SSR 96-8p. The ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis ... and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ "must also explain how any material inconsistencies or ambiguities in the case record were considered and resolved." *Id.* "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* The RFC assessment "must not be expressed initially in terms of the exertional categories of "sedentary [or] light;" rather, a function-by-function evaluation is necessary in order to arrive at an accurate RFC. *Id.* ("[A] failure to first make a function-by-function assessment of the [claimant's] limitations of restrictions could result in the adjudicator overlooking some of [the claimant's] limitations or restrictions.").

31. In this case, the ALJ predicated his RFC determination on the fact the Plaintiff was working up until January, 1997 when she was reportedly told to leave for being unable to lift seventy pounds or more. *See* R. at 24. The ALJ stated that

> [i]n spite of her complaints of pain and limitation, Claimant worked until January 1997. What is more, Claimant has described her last job as requiring that she frequently lift 70 pounds or more. This work would be considered at least 'heavy.' In view of Claimant's description of the work she was doing as late as January 1997 and the lack of objective clinical findings as of August 1997, the opinion of State agency physicians that Claimant retained the capacity for medium level work is not unreasonable. *See* R. at 24.

Dr. Morgan's RFC's concluded that the Plaintiff is capable of medium level work. *See* R. at 179.

32. The ALJ ultimately determined that the Plaintiff was able to perform at least light

13

work, not medium work. After reading the opinion and the record, I find the ALJ analysis of the Plaintiff's RFC determination was consistent with the regulations and that it was supported by substantial evidence.[4] There is nothing in the record to contend otherwise. SSR 96-8 states that an "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." The ALJ must demonstrate that he considered all of the evidence in the record, but he is not required to discuss every piece of evidence. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

33. In this case, the ALJ documented the Plaintiff's entire medical history within his opinion. He also properly relied on the significance of the absence of medical reports from 1994 to 1997. After review of the record, I find that the ALJ performed the proper analysis and his findings are supported with substantial evidence in the record.

## **Past Relevant Work**

34. Plaintiff claims that the ALJ erred in determining that she could return to her past relevant work as a security guard or stock puller. Step four of the sequential analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F. 3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity. *See id.* (citing *Henrie v. U. S. Dept of Health & Human Servs.*, 13 F. 3d 359, 361 (10th Cir. 1993 )). In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *See*

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C. F. R. § 404.1567(b), 416.967(a) (1986).

*id.* In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. *See id.*

35. In this case, the ALJ properly performed the step four analysis. First, the ALJ found that Plaintiff retained the residual functional capacity for at least light work. *See* R. at 24. In the second phase, the ALJ determined that Plaintiff's jobs as a stock puller and security guard were light work. *Id*. Plaintiff reported that her job as security guard required eighth hours per day of sitting and driving a shuttle. *See* R. at 80. At the third phase, the ALJ concluded that Plaintiff's past work did not entail any functional demands in excess of Plaintiff's residual functional capacity and thus she was able to perform her past job. *See* R. at 24. Substantial evidence thus supports the ALJ's step four determination.

## RECOMMENDED DISPOSITION

The ALJ did apply the correct legal standards and his decision is supported by substantial evidence. I recommend that the Plaintiff's Motion to Reverse and Remand Administrative Decision, filed September 14, 2001 (*Doc. 6*), should be **DENIED**. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**